UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
THIRD DIVISION

Malia Narikawa,                                                                                          Civil No. 05-2379 MJD/AJB

                Plaintiff,

v.                                                                                            **REPORT AND RECOMMENDATION**
                                                                                                         **ON MOTION TO DISMISS**

BCBSM, Inc., a Minnesota corporation
d/b/a Blue Cross Blue Shield of Minnesota,

                Defendant.

      Alf E. Sivertson, Esq., on behalf of plaintiff Malia Narikawa;

      Aaron Mills Scott, Esq., for defendant BCBSM, Inc.

           This matter is before the court, Magistrate Judge Arthur J. Boylan, on defendant BCBSM, Inc.'s motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) [Docket No. 24].  Hearing was held on November 15, 2006, at the U.S. Courthouse, 180 East Fifth Street, St. Paul, MN  55101.  The case has been referred to the Magistrate Judge for report and recommendation under 28 U.S.C. §636(b)(1)(B).  For reasons discussed below the Magistrate Judge **recommends** that defendant's motion to dismiss the complaint be **granted**.

**DISCUSSION**

**Background and Claims**

           Plaintiff Malia Narikawa was employed by American Summit Corporation until June 30, 2002.  Upon her separation from the company Ms. Narikawa was offered and elected to received

COBRA health insurance coverage[1] through BCBSM for July, August, and September 2002.  Her election was timely and the premiums were prepaid.  During the three months in which plaintiff carried COBRA coverage she incurred medical expenses with the Aspen Medical Group, Neurological Associates, Midwest MRI, and St. Paul Radiology.  However, the COBRA coverage had not been activated and the medical bills went unpaid.  Plaintiff was not aware that the bills had not been paid until she was sued by Neurological Associates in February 2005, for the amount of $991.88 in unpaid medical expenses.  Neurological Associates garnished plaintiff's bank account in the amount of $775.95 on February 23, 2005, and further served a notice of intent to garnish earnings dated March 7, 2005.  Aspen Medical Group served a summons and complaint on the plaintiff on March 2, 2005, therein seeking payment of $2356.00 in damages relating to medical services that were provided during the time of COBRA coverage as well as services provided during the time of prior employment.  Plaintiff promptly contacted other providers to make inquiries as to the status of claims payments.

Meanwhile, plaintiff also contacted BCBSM with regard to her COBRA coverage.  She was advised that COBRA reinstatements and claims are sometimes "crossed up" and that the claims should not be resubmitted, but perhaps could be reprocessed upon request by the providers.  Plaintiff conveyed this information to Midwest MRI and St. Paul Radiology.  After being sued by Aspen Medical Group plaintiff again called BCBSM and spoke with an employee of the insurer named "Reese."  The employee was unable to immediately gain computer access to plaintiff's complete claims

---

[1] Consolidated Omnibus Budget Reconciliation Act of 1985.  The statute requires certain employers to provide health insurance options, including temporary extension of group coverage, for individuals who lose coverage under an employer-sponsored health insurance plan.

file, but indicated that he would order a claims resume to be sent to the plaintiff. A claims resume was never received by Ms. Narikawa. She contacted an attorney for Aspen Medical Group on March 22, 2005, and discussed her COBRA coverage and the need to have claims reprocessed, but nonetheless judgment on the Aspen Medical suit was entered on April 22, 2005, in the amount of $2, 841.00. An Aspen Medical representative later told plaintiff that BCBSM advised Aspen Medical that coverage ceased on June 30, 2002. The date of coverage termination was confirmed when plaintiff again spoke with "Reese" at BCBSM, and the representative suggested that plaintiff contact the COBRA administrator. Consequently, plaintiff sought assistance from Mr. Richard Anderson, an executive vice president with her former employer. Mr. Anderson confirmed that Ms. Narikawa had in fact elected COBRA coverage through September 30, 2002, and he obtained documentation to that effect from the plan administrator, Benefits Extra, on or about August 29, 2005. Mr. Anderson then contacted BCBSM to look into the matter, and on September 8, 2005, the employer received a call from the insurer indicating that further inquiries should be directed to the legal department. Anderson or another employer representative made three calls to the BCBSM legal department between September 8, 2005, and September 16, 2005, but promises for a response by an attorney went unfulfilled.

   Plaintiff commenced this action by complaint filed on October 11, 2006, in which her former employer, WealthSpring Mortgage Corporation, was named as the sole defendant. WealthSpring Mortgage answered the complaint and further brought BCBSM into the action by third-party complaint. BCBSM answered by pleading dated December 19, 2005. On September 7, 2007, the court issued an order adopting the stipulation of all the parties whereby plaintiff's claims against WealthSpring Mortgage were dismissed and plaintiff was granted leave to file an amended complaint

directly alleging claims against BCBSM. An amended complaint was filed on September 27, 2006, therein alleging a claim of breach of duty to provide COBRA coverage pursuant to 29 U.S.C. § 1166, 29 U.S.C. § 1132(a)(1)(A) and (B), and 29 U.S.C. § 1132(c). As damages the complaint seeks a statutory civil damages award based upon defendant's failure or refusal to provide requested information. Plaintiff expressly states that she is not seeking damages under 29 U.S.C. § 1109, despite a reference to that statute in the complaint. Plaintiff further advises the court and counsel that she is not seeking extra-contractual damages based upon mental and emotional suffering and damage to her credit rating, though such allegations may be pertinent to the claim for civil damages. Finally, plaintiff does not dispute defendant's contention that the actual medical bills at issue were ultimately paid by BCBSM, albeit after this law suit was filed, and Ms. Narikawa therefore cannot claim those amounts as damages in this case. Defendant BCBSM now moves to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6), failure to state a claim for which relief can be granted.

**Motion to Dismiss**

**Standard of Review.** Federal Rule of Civil Procedure 12(b)(6) provides that a pleader may assert a defense of failure to state a claim upon which relief can be granted by motion. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957). The reviewing court must take all well pleaded allegations as true and in the light most favorable to plaintiff. St. Croix Waterway Ass'n v. Meyer, 178 F.3d 515, 519 (8th Cir. 1999). Further, the court must accord reasonable inferences in favor of the non-moving party. Holloway v. Lockhart, 792 F.2d 760, 761-62 (8th Cir. 1986)(citing Conley, 78

S.Ct. at 101-02).  However, the court is not required to accept the legal conclusions drawn by the pleader from those facts, <u>Thompson v. Olsten Kimberly Qualitycare, Inc.</u>, 980 F.Supp. 1035, 1037 (D. Minn. 1997), and a plaintiff cannot rely upon general and conclusory allegations to survive a Rule 12(b)(6) motion.  <u>Martin v. Sargent</u>, 780 F.2d 1334, 1337 (8th Cir. 1985).

When matters outside the pleadings are presented with a Rule 12(b)(6) motion, and those matters are not excluded by the court, the motion should be treated as a Fed. R. Civ. P. 56 motion for summary judgment.  Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The moving party has the initial responsibility of demonstrating that there is no genuine issue of material fact to be decided.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-323, 106 S.Ct. 2548, 2553 (1986). In its review of the facts the court must consider the evidence in the light most favorable to the party opposing summary judgment.  <u>Kneibert v. Thomson Newspapers, Michigan, Inc.</u>, 129 F.3d 444, 451 (8th Cir. 1997).  When a motion for summary judgment has been made and supported by the pleadings and affidavits as provided in Rule 56(c), the burden shifts to the party opposing the motion to proffer evidence demonstrating that a trial is required because a disputed issue of material fact exists. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986).  In satisfying this burden, however, the non-moving party must do more than simply establish doubt as to the material facts.  The party opposing summary judgment may not "rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." <u>Matsushita</u>, 106 S.Ct. at 1355, n.11, <u>Krenik v. County of Le Sueur</u>, 47 F.3d 953, 957 (8th Cir. 1995).  Fed. R. Civ. P. 56(e).  Evidence must be presented to defeat a

properly supported summary judgment motion and a party may not rely upon conclusory allegations and unsupported assertions. Dunavant v. Moore, 907 F.2d 77, 80 (8th Cir. 1990). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 106 S.Ct. at 1356 (citation omitted).

The defendant in this matter did not alternatively move for summary judgment, but submitted affidavits and exhibits in support of its motion to dismiss pursuant to Rule 12(b)(6). Plaintiff has likewise submitted materials outside the pleadings in opposition to the motion to dismiss. In any event, plaintiff does not contend that a need for additional discovery precludes ruling on the motion to dismiss on the basis of the present record. It is the court's determination that under these circumstances the motion is properly treated as one for summary judgment and facts submitted by affidavit are properly considered on this motion without a requirement that those same facts be alleged in a second amended complaint.

**Claim for Statutory Penalties.** Plaintiff in this actions seeks statutory civil damages pursuant to 29 U.S.C. §1132(c) which provides that:

> (1) Any administrator . . . (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of $100[2] a day from the date of such failure or refusal, and court may in its discretion order such other relief as it deems proper. For purposes of

---

[2] Limit increased from $100 to $110 for violations after July 29, 1997, pursuant to Debt Collection Improvement Act of 1996. Christensen v. The Qwest Pension Plan, 462 F.3d 913, 919 n.3 (8th Cir. 2006).

this paragraph, each violation described in subparagraph (A) with respect to any single participant, and each violation described in subparagraph (B) with respect to any single participant or beneficiary, shall be treated as a separate violation.

It is plaintiff's claim in this action that she is entitled to an award of up to $110 per day with respect to each occurrence in which defendant failed to provide information pursuant to her multiple requests. Defendant contends that as a matter of law the plaintiff has not established her right to statutory damages because defendant did not fail or refuse to comply with a request for information that the administrator was required to furnish pursuant to statute. In support of its position defendant insists that plaintiff's only contacts with the BCBSM were by telephone and she never made a written request for information relating to her ERISA plan or COBRA coverage. It is asserted that this distinction is important because an oral request for information would trigger liability for statutory penalties only to the extent that defendant failed to provide information that the plan participant was entitled to receive automatically, even without an explicit request, and plaintiff has not particularly identified any materials to which she was entitled to receive, but that defendant failed to provide. With respect to documents and information that plaintiff was not automatically entitled to receive, defendant argues that the civil penalty provision does not apply because there was no written request for such materials. Furthermore, defendant contends that agency regulations cannot create the liability for statutory civil penalties that the plaintiff seeks to obtain in this case.

Statutory damages under 29 U.S.C. §1132(c) may not be imposed unless the words of the statute plainly allow imposition of the penalty. Christensen v. The Qwest Pension Plan, 462 F.3d 913, 919 (8th Cir. 2006)(citing Commissioner v. Acker, 361 U.S. 87, 91, 80 S.Ct. 144 (1959). Plaintiff's §1132(c) claim for damages under in this case is based upon a self-described broad request

for information with regard to which it is asserted that the statute required the defendant to furnish. As an evidentiary issue, plaintiff's affidavit indicates that she contacted defendant by telephone on at least three occasions and on two of those occasions she requested "whatever information [BCBSM] had regarding my COBRA coverage."[3] Plaintiff makes no allegation that she made any request for information in writing; that she made a request for particularly described documents or information; or that a particular statutory provision required that certain information be furnished automatically by the plan administrator. Likewise, there is no evidence that any written requests for information, or any requests for specific documents, were presented on plaintiff's behalf by her former employer.[4] Not to be deterred, plaintiff argues that the ERISA statute at 29 U.S.C. § 1029(c) provides that the agency may require that additional information must be provided by the plan administrator, and that Department of Labor regulations at 29 C.F.R. § 2560.503-I(h)(2)(iii) states that documents relevant to a claim for benefits shall be provided upon request by a claimant. However, 29 U.S.C. §1132(c) only authorizes a penalty for failure to perform duties imposed under the statute itself and the statute cannot be extended to provide a basis for sanctions for failure to fulfill agency regulatory obligations. Wilczynski v. Lumbermens Mut. Cas. Co., 93 F.3d 397, 406 (7th Cir. 1996)(citing Groves v. Modified Retirement Plan, 803 F.2d 109, 113 (3rd Cir. 1886)). Moreover, the federal regulation itself does not impose a strict liability penalty. See Brucks v. The Coca-Cola Company, 391 F.Supp.2d 1193, 1211 (N.D. Ga. 2005).

      Courts have previously acknowledged "that penalties under 29 U.S.C. §1132(c)(1)(B)

---

[3] Affidavit of Malia Narikawa, ¶¶ 7 and 9.

[4] See Affidavit of Richard Anderson.

can be triggered by an oral request for information where the plan administrator is required to give the participant information under another provision of ERISA." Borneman v. Principal Life Ins. Co., 291 F.Supp.2d 935, 970-71 (S.D. Iowa 2003)(referencing Crotty v. Cook, 121 F.3d 541 (9th Cir. 1997) and Brooks v. Metrica, Inc., 1 F.Supp.2d 559, 565 (E.D. Va. 1998)). However, in Crotty and Brooks, the information which was required to be furnished to the participant was identified by statute with great specificity and an oral request was therefore sufficient in those instances. Borneman at 971.

Plaintiff's statutory damages claim in this case relies wholly upon a reading of 29 U.S.C. §1132(c)(1)(B) in its broadest possible sense, a position that runs entirely contrary to the Eighth Circuit Court of Appeals instruction whereby statutory damages under 29 U.S.C. §1132(c) may not be imposed unless the words of the statute plainly allow imposition of the penalty. Christenson v. The Qwest Plan, 462 F.3d 913, 919. Furthermore, plaintiff's reliance upon the decision in Sandlin v. Iron Workers Dist. Council, 716 F.Supp. 571 (N.D. Ala. 1988) is misplaced because in that matter the defendant "called and wrote defendant with considerable persistence, demanding an explanation of the discontinuance of his pension benefits." Id. at 572 (emphasis added). In addition, in the present action the court is bound by precedent that did not similarly constrain the court in Sandlin. Id. at 573. As a matter of law plaintiff cannot maintain her claim for statutory civil damages under 29 U.S.C. §1132(c)(1)(B) and defendant is entitled to summary judgment dismissing the claim.

## RECOMMENDATION

For the reasons stated above, it is hereby **recommended** that defendant BCBSM's motion to dismiss be **granted** [Docket No. 24] and that the amended complaint in this matter be **dismissed** with prejudice.

Dated:   December 1, 2006

   s/ Arthur J. Boylan
Arthur J. Boylan
United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.  Written objections must be filed with the Court before December 15, 2006.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.